STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. UNION BAG-CAMP PAPER CORPORATION, DEFENDANT-RESPONDENT.

Argued June 5, 1961—Decided June 30, 1961.

*Mr. Charles J. Kehoe,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Theodore I. Botter,* Assistant Attorney General, of counsel).

*Mr. Elmer J. Bennett* argued the cause for defendant-respondent (*Messrs. Carpenter, Bennett & Morrissey,* attorneys).

The opinion of the court was delivered by

FRANCIS, J.   In this custodial *escheat* action brought under *N. J. S. 2A*:37–29 (*L.* 1951, *c.* 304), the Chancery

Division of the Superior Court entered judgment for the defendant on the ground that the property involved had no *situs* in New Jersey. We certified the ensuing appeal of the State before it was argued in the Appellate Division.

Union Bag and Paper Corporation was organized as a corporation of the State of New Jersey in 1916. Its principal office existed in this State until the merger to be discussed hereafter. It had, and the corporation resulting from the merger still has, a paper box manufacturing plant in this State. For a period of five successive years prior to July 12, 1956, certain wages due former employees of Union, deductions withheld from wages of former employees for installment purchase of United States Savings bonds, and dividends on its capital stock remained unpaid and unclaimed. At the time of trial it was undisputed that the sums owed by Union from those sources were: $3,424.28 in unpaid wages, $206.25 deductions from wages for purchase of Savings Bonds, and $954.25 dividends on stock. No New Jersey resident was owed any part of the moneys, nor were any of the wages earned in this State. In view of the fact, however, that Union was a domestic corporation and citizen of New Jersey during the period of accrual of the debts, there is no doubt that they constituted intangible property escheatable to the State when they had remained unclaimed for the time prescribed by the statute. *N. J. S.* 2A:37–29, 34. For *escheat* purposes their *situs* was clearly in this State. *Standard Oil Co. v. State of New Jersey,* 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951) ; *State by Richman v. Sperry & Hutchinson Co.,* 23 *N. J.* 38, 48 (1956) ; *State by Van Riper v. American Sugar Refining Co.,* 20 *N. J.* 286 (1956).

The Custodial Escheat Act, 2A:37–29, provides that:

"* * * [T]he state may take into its protective custody property consisting of cash, dividends, interest or wages owed by any corporation organized or doing business under the laws of this State, belonging to any person remaining unknown, or whose whereabouts is unknown, or whose property remains unclaimed as defined herein

for a period of 5 successive years; and after a period of protective custody has expired as herein prescribed, the state may proceed to escheat such property to itself."

The act empowers the Superior Court, in a summary action brought in the name of the State of New Jersey by the Attorney General, to direct the corporation to deliver such moneys to the State Treasurer for safekeeping. *N. J. S.* 2*A* :37–30. In order to facilitate the accomplishment of the purpose the Legislature ordained further that:

"It shall be the duty of any * * * person having knowledge or information concerning any escheatable property as defined herein, to notify the attorney general of this state within a reasonable time, of the existence of such escheatable property." *N. J. S.* 2*A* :37–42.

Union, being a "person" under this section, is bound by the mandate to report property in its possession which is subject to custodial escheat. *N. J. S.* 2*A* :37–11. The primary purpose of the Custodial Escheat Act was to confer upon the State the right to possession of unclaimed funds in ample time to avoid the possible application of the six-year statute of limitations. *State by Parsons v. United States Steel Corp.,* 22 *N. J.* 341, 353 (1956). Obviously, therefore, a reasonably prompt notification is contemplated so that the Attorney General may institute the summary action to transmute the right of possession into the fact of possession without fear of the six-year bar. A reasonable time in this, as in so many situations, depends on the particular circumstances. Here, as will presently appear, compliance with the requirement called for a report within a well defined period of time.

The report is of inestimable value to the State. If the duty to make it had not been imposed by the Legislature, the Attorney General would have the tremendous burden of inquiry of the thousands of corporations of the State at regular intervals to ascertain whether they possessed escheatables subject to the Custodial Escheat Act. This

Court has recognized the importance of the notification duty to the effectuation of the legislative *escheat* program. In *State by Parsons v. United States Steel Corp., supra,* the mandate was made more meaningful by a declaration that if a timely report is not filed, the statute of limitations will not be allowed to defeat prosecution of the action. 22 *N. J., supra,* at *pp.* 355–360.

On January 11, 1956, Union entered into a formal agreement of merger with Camp Manufacturing Co., Inc., a Virginia corporation. Under the agreement Union was to merge into Camp, the survivor or product corporation to be a Virginia corporation and to be known as Union Bag-Camp Paper Corporation. The merger was consummated and became effective on July 12, 1956. The assets and property of "every kind and description" of Union were turned over to Union-Camp and the constituent Union gave up its existence. But in order to protect the original name of the New Jersey company from use by anyone else, a new corporation was formed in New Jersey and given that name. It had no assets, never functioned and was simply a shell, designed solely to preserve the Union Bag and Paper Corporation name. After the merger, however, the product corporation continued to do at least the same amount of business in New Jersey as the constituent Union had done prior thereto, and also kept the manufacturing plant in this State in operation. To obtain official sanction for such business activity by a foreign corporation, Union-Camp applied for and was granted a license to do business in New Jersey. Thereupon the company became subject to the jurisdiction of the courts of this State.

At no time prior to January 11, 1956, the date of the merger compact, or thereafter down to July 12, 1956, when the merger became effective and the constituent company Union thus left the New Jersey scene, did Union file the report required by statute with the Attorney General revealing its possession of property or debts which had remained unclaimed for five years. Union was not unfamiliar with

*escheat* proceedings. It had been a defendant in two of them since the enactment of the 1951 Custodial Escheat Act. Judgment for the State was entered in one on July 2, 1954 and in the other on July 19, 1954. Reference to these cases is made only to demonstrate that Union was not a stranger to *escheat*. There is no intimation in the record that the merger was stimulated by a desire to avoid further litigation of that nature.

On January 9, 1957 the State instituted the present action against Union Bag-Camp Paper Corporation, the Virginia corporation, to bring into its custody the funds representing claims against Union which arose while it was a resident New Jersey corporation and which had been unclaimed and unpaid for five years before the merger. The complaint alleged generally the nature of the escheatables sought. There was no specification of amounts involved in the various classes of obligations. Deductions from wages for the purchase of Government bonds were not mentioned but, of course, came within the reference to "other personal property" held by defendant. Union-Camp filed an answer admitting that it had "in its custody or possession or subject to its control outside the State of New Jersey, personal property which has remained unclaimed by the owners or beneficial owners thereof, for the period of five successive years, and the said owners or beneficial owners or persons entitled or their whereabouts have been unknown for the aforesaid period of time." Answers to interrogatories then served upon defendant revealed the exact obligations which arose while Union was a resident and citizen of this State, *i. e.*, unclaimed dividends on stock, unclaimed wages and deductions from wages for Government bonds, in the various amounts specified above.

At the hearing in the Chancery Division defendant conceded that during the five years prior to completion of the merger, Union being a resident corporation, the intangible property (that is, the unpaid debts) had its *situs* in New Jersey and accordingly was subject to the Custodial Escheat

Act. But it contended that once the constituent companies merged and the product corporation was a resident and citizen of another state, Virginia, the *situs* of the intangibles shifted immediately to the foreign state and our courts no longer had jurisdiction over them. That contention was accepted as correct and judgment was entered for defendant. In our opinion, the ruling was erroneous.

Our General Corporation Act provides with respect to mergers as follows:

"When such merger or consolidation is effected,   *   *   *
All rights of creditors and all liens upon the property of the former corporations shall be preserved unimpaired, and the respective former corporations may be deemed to continue in existence in order to preserve the same, and all debts, liabilities, restrictions and duties of the former corporations shall thenceforth attach to such consolidated corporation, and may be enforced against it to the same extent as if they had been incurred or contracted by it." *R. S.* 14:12–5.

By virtue of this enactment, for purposes of answering for the liabilities of a constituent entity, the corporation which is the product of a merger must be deemed to be the same as each of its components with their existence continued in it. Their liabilities must continue as before, and be capable of enforcement against the product corporation in the same way as if no change had occurred in organization or name of the original companies. The merger statute sanctioned and authorized incorporated companies to combine into a single entity. *N. J. S. A.* 14:12–1 to 10. But the very objective of the section just quoted was to preserve all outstanding obligations and to provide remedies necessary to their enforcement. If persons who have claims or rights against a constituent company have done nothing to impair or release them, it would be wholly incompatible with the legislative intention to say that the rights can be lost through the mere act of merger. So far as it can be accomplished within the limits of due process, the obligations of a merged obligor ought to be treated in the same manner

as if the product corporation itself incurred them. *In re Utica Nat. Brewing Co.,* 154 *N. Y.* 268, 48 *N. E.* 521, 522 (1897); *Biederman v. Liebmann Breweries,* 1 *A. D. 2d* 708, 147 *N. Y. S. 2d* 172 (*App. Div.* 1955); *In re Clover Ridge Planting and Mfg. Co.,* 178 *La.* 302, 151 *So.* 212 (*Sup. Ct.* 1933); *American Ry. Express Co. v. Downing,* 132 *Va.* 139, 111 *S. E.* 265 (*Sup. Ct. App.* 1922); *Fletcher, Cyclopedia Corporations,* § 7117. It has been said in a number of jurisdictions that the assets of a constituent company constitute trust funds in the hands of the product corporation for the purpose of meeting obligations of the former; also that an equitable lien or charge comes into being for that purpose. *First Nat. Bank of Tulsa, Okla. v. Hoover,* 269 *S. W.* 262 (*Tex. Civ. App.* 1925); *Fletcher, op. cit. supra* § 7128.

What effect do all of these considerations have upon the position of New Jersey in this proceeding? Under the Custodial Escheat Act, at the end of the five-year period it had an accrued right of possession of the moneys representing the unpaid and unclaimed debts admittedly unqualifiedly owed by Union (*i. e.,* there was no defense to any creditor's claim). Undoubtedly, if the statutory duty to report those obligations to the Attorney General had been complied with within a reasonable time before July 12, 1956, the date of the merger, the summary action would have been brought and the accrued right to possession made the actuality of possession. The history of the two previous actions and the institution of this one, even in the absence of the required report from Union, make such a conclusion inescapable. So it is not unreasonable to say that some relation of cause and effect existed between the failure to report and the filing of the action after the merger had been completed. It is true, as defendant points out, that the statute imposes no specific penalty for Union's failure. But no one can doubt that violation of the duty to notify, in a context such as the present one, adds potency to any pertinent equity

possessed by the State. See *State by Parsons v. United States Steel Corp., supra,* 22 *N. J.,* at *pp.* 357, 358.

To defeat the State's right to possession, Union-Camp relies on the *Standard Oil* and *Sperry & Hutchinson* cases, *supra,* which recognize the *situs* of obligations to pay wages, declared dividends, and the like as being in the state of residence of the obligor corporation. It reasons that since the product corporation is a Virginia resident, the *situs* of the debts automatically moved into that state upon completion of the merger. On the facts in this case there is little equity in that position.

The obligations in question arose when Union lived here and enjoyed the protection and advantages of our liberal corporation laws. See *State by Van Riper v. American Sugar Refining Co., supra,* 20 *N. J.,* at *p.* 296. At the end of the five-year period the State had the superior right to custody of the cash representing the unpaid and unclaimed debts—the greater right to hold it for the benefit of and subject to demand by the creditors. At that time Union had no substantial moral or legal right to it and would receive full protection against further claims on turning it over. Any creditor's right to all or any part of the fund then would become the obligation of the State. *N. J. S.* 2A:37–33.

When Union and Camp decided to take advantage of the legislative permission to merge, *R. S.* 14:12–5 made effectuation of their intention subservient to any enforceable obligation under the Escheat Act then existing against Union. At that time, therefore, the merger was burdened with the State's accrued right to custodial possession of the escheatable property involved here. The broad language of statutory reservation invests the right of possession with the characteristics of an equitable lien, and the equities with respect to recognition of the right are so pervasive that, within the boundaries of due process, the merger should not be permitted to frustrate its enforcement. To put the matter another way: when the two corporations accepted the benefits of the

merger statute, they and the product corporation impliedly or by operation of law consented that the *situs* of the particular unclaimed debts (or the significant contacts which have been recognized by the cases as sufficient to justify *escheat*) would remain in New Jersey for such reasonable time after the Attorney General had notice or knowledge of the escheatable property as would permit the institution of a custodial *escheat* action.

Unlike the defendant corporation in *State by Richman v. National Power & Light Co.*, 16 *N. J.* 486 (1954), Union-Camp is present in New Jersey. Having been licensed to transact business here and an agent having been designated by it for purposes of service of process, the *in personam* jurisdiction of our courts is applicable. Therefore, when the defendant was personally served with summons, the effect of such service in combination with the obligations resulting from the merger statutes was to render it and the specific intangible property involved, which was admittedly under its control, just as bound by a judgment for custodial possession by the State as if Union were still here as a resident corporation.

The decision sustaining the State's right to maintain this suit does not signify that an *escheat* action is maintainable against a foreign corporation merely because it is licensed to do business in New Jersey and therefore subject to our jurisdiction. No expression of view is necessary or is made on that problem. Our holding is limited to a determination that on the peculiar facts of *this* case, the Chancery Division has authority to order custodial *escheat*. More specifically, the factors which form the basis for our opinion are: (1) Union was a resident corporation of New Jersey and the *situs* of its property for custodial *escheat* purposes at the end of the five-year period prescribed by the statute was in this State; (2) at the end of that period the State had an accrued right to possession of the unclaimed funds representing the debts in question which had arisen while Union was resident here; (3) Union and Camp merged

subject to the statute which continued all obligations of Union in existence against the non-resident product corporation; (4) Union failed to report the escheatable property to the Attorney General in sufficient time before the effective date of the merger to reasonably permit this action to be brought; (5) upon the merger, Union-Camp took the property of Union into its control subject to the existing *escheat* obligation, and by obtaining a license to do business in New Jersey impliedly consented to continue the *situs* of the escheatables and its own presence here subject to the jurisdiction of our courts to order the obligation satisfied. Thus, on the factual complex now before us, we believe that the "power to seize the debt by jurisdiction over the debtor provides not only the basis for notice to the absent owner but also for taking over the debt from the debtor." *Standard Oil Co. v. State of New Jersey, supra,* 341 *U. S.,* at *p.* 439, 71 *S. Ct.,* at *p.* 828.

The quoted language of the United States Supreme Court supplies clear support for the view that in a case like *this* one, the "test of state power to seize the debt is simply whether the debtor corporation is amenable to process in a state action in which adequate notice can be given the creditor." See *State by Richman v. Western Union Telegraph Co.,* 17 *N. J.* 149, 159–160 (1954), and compare *Schoener v. Continental Motors Corp.,* 362 *Mich.* 303, 106 *N. W. 2d* 774 (*Sup. Ct.* 1961); *Connecticut Mut. Life Ins. Co. v. Moore,* 297 *N. Y.* 1, 74 *N. E. 2d* 24, 27 (*Ct. App.* 1947), affirmed 333 *U. S.* 541, 68 *S. Ct.* 682, 92 *L. Ed.* 863 (1948); *Commonwealth by Gottlieb v. Western Union Telegraph Co.,* 400 *Pa.* 337, 162 *A. 2d* 617 (*Sup. Ct.* 1960), probable juris. noted 365 *U. S.* 801, 81 *S. Ct.* 466, 5 *L. Ed. 2d* 459 (1961).

Defendant's principal reliance in support of the trial court's judgment is on *State by Richman v. National Power & Light Co., supra.* In that case, New Jersey and Delaware corporations merged and the product became an entity of the latter state with its principal office there. Thereafter,

the new corporation did not obtain a license to do business in this State and was not subject to service of process here. The State instituted an *escheat* suit against the constituent former New Jersey company. The action was dismissed on the ground that upon completion of the merger the New Jersey entity ceased to exist and that any preexisting liabilities which survived the merger under *R. S.* 14:12–5 could only be enforced in a suit against the product corporation. The latter corporation not being amenable to service in New Jersey, the State was without remedy. The critical distinction between that case and the present one, as we have already noted, rests in the matter of jurisdiction. In this case, our courts have retained their *in personam* jurisdiction over Union-Camp at its own request and by its own action obtaining the license to operate here. That being so, for the reasons outlined enforcement of the State's existing right to custodial escheat continued unimpaired.

Reversed and remanded for entry of appropriate judgment.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.