HAZEL H. HANDLER AND EDWARD HANDLER, HER HUS-BAND, COMPLAINANTS-RESPONDENTS, v. HENRY W. HORNS ET AL., DEFENDANTS-APPELLANTS.

Argued February 21, 1949—Decided April 11, 1949.

*Mr. Robert L. Hood* (*Mr. William J. Egan,* attorney) argued the cause for the appellants.

*Mr. George R. Handler* argued the cause for the respondents.

The opinion of the court was delivered by

ACKERSON, J. Defendants appeal from a decree of the former Court of Chancery in a suit instituted for partition of certain real estate, and the sole question presented is whether or not certain fixtures installed therein by a tenant are removable as chattels.

In 1929, Henry Horns and his wife Augusta leased to their son, Fred Horns, the premises in question consisting of a five-story brick building on Mulberry Street, Newark, New Jersey, theretofore occupied by a dealer in seeds and garden supplies, who used the first floor as a store and the upper floors for storage. The lease to Fred Horns was for a term beginning September 1, 1929, and continuing until "the first day of the sixth month" following the death of the survivor of the two lessors, at a rental of $500 per month. This lease gave Fred Horns the privilege of installing a new front in the building and otherwise altering it for use as a plant for the processing, refrigeration and sale of meat, and he covenanted to keep the building and its appurtenances "in as good and sufficient repair as at the date of the execution hereof * * * and at the end or other expiration of the term, will deliver up the demised premises and its fixtures in as good condition as on the date hereof"—ordinary wear and tear excepted. Additionally the tenant was given the option to purchase the premises any time before the expiration of the lease for $75,000.

The lessee, Fred Horns, promptly installed a refrigeration system in a considerable portion of the leased building. He placed in the basement refrigeration compressors, machinery, ammonia tanks, and piping which extended to the second, third, fourth and fifth floors. Partitions insulated with cork and fitted with refrigerator doors were built across the rear end of each of these floors. All windows in each of the refrigeration rooms thus formed were filled up with brick and the walls and floors were insulated with cork and properly covered. Inside these refrigeration rooms steel "I" beams were installed along the ceiling from wall to wall and between the "I" beams were suspended wooden beams to which in

turn were bolted tracks or rails for meat hangers, and above the beams and resting on them refrigerating coils were built in wooden troughs. So that, in effect, each floor above the first was a complete cold storage room with tracks for the meat hangers continuing on out from within the room to an elevator in the small service room to the rear. The ground floor of the building was not materially altered, and was at that time, and is still used as a store. The entire cost of the alterations and improvements was approximately $89,000.

Augusta Horns, who survived her husband, died on October 11, 1937, and by will devised the aforesaid premises to her three children, Hulda Muller, now deceased, Fred Horns, the tenant then in possession, and Clara Horns, who thereby became seized thereof as tenants in common. The complainant Hazel H. Handler is the only child and sole devisee of Hulda Muller, deceased.

After his mother's death, Fred Horns' lease expired according to its terms, on the "first day of the sixth month" thereafter, which was on April 1, 1938, and his option to purchase was never exercised. Nevertheless he continued on in possession as a hold over tenant paying the same rental and on April 14, 1939, he and the corporation which he had formed to carry on his business under the name of Fred Horns, Inc. (later changed to Fred Horns & Son), entered into a new lease with the then owners of the premises, who were himself and his two sisters, for a term of two years, from May 1, 1939, to April 30, 1941, at the same rental with an option of renewal for an additional term of three years. That lease provided, *inter alia,* as follows:

"*Sixth:* That no alterations, additions or improvements shall be made * * * without the consent of the Landlords * * *, and all additions and improvements made by the Tenant shall belong to the Landlords.

 * * * * * * *

"*Twenty-Seventh:* It is further * * * agreed between the parties hereto that at the expiration of this lease or any renewal thereof, the Tenant shall have the right to remove any and all trade fixtures that may belong to it or which it may have installed in the premises, with the exception, however, of any fixtures that may be so affixed to the building as to become a part of the realty and not removable without causing material damage to the premises."

When the term of this lease expired, the tenants continued on under a tenancy from year to year at the same rental. Fred Horns died in 1945 bequeathing his meat business and any interest in the fixtures on the premises in question, and all shares of stock of the defendant corporation, Fred Horns & Son, through which he was conducting said business, to his son, the defendant, Henry W. Horns. The premises are still occupied by that corporation as tenant from year to year, which corporation is apparently owned by said Horns by virtue of his father's will.

The complainant Hazel Handler, who owns an undivided one-third interest in the premises, claims that all of the improvements made by Fred Horns were annexed to and became part of the realty and therefore may not be removed by the tenant. Defendant, Henry W. Horns, who is also the owner of an undivided one-third interest in the premises, claims to be the owner of the improvements installed by his father with the right to remove them as trade fixtures, which right is conceded by the defendant, Clara Horns, the owner of the remaining one-third interest in the premises. Such concession, however, made during the progress of the suit and under the circumstances here presented, is not controlling so far as the plaintiffs are concerned.

The subject of the litigation was referred to a special master who reported that the premises could not be partitioned but should be sold in one parcel and that all of the fixtures placed in the building by the tenant had become a part thereof and were to be sold therewith. Exceptions having been taken to this report in so far as it applied to the fixtures, the matter came before a Vice-Chancellor who concluded that it was the intention of the tenant that the fixtures should become a part of the realty. He considered, *inter alia,* that the whole installation made "one economic unit, the greater part of which could not be advantageously removed" and, applying the institutional theory, confirmed the master's report.

It is an ancient maxim, which in the language of antiquity is expressed *quicquid plantatur solo, solo cedit,* that whatsoever is fixed to the realty is thereby made a part of

the realty to which it adheres, and partakes of all of its incidents and properties. 36 *C. J. S.* (*Fixtures*), § 1, *p.* 889; *Bank of America Nat. Ass'n v. La Reine Hotel Corp.,* 108 *N. J. Eq.* 567, 571 (*Ch.* 1931). But through the advancing years that old maxim has given way to numerous exceptions. One of the most conspicuous modifications of this rule is exhibited in the instance of fixtures put upon property by a tenant. As between landlord and tenant the presumption being that the tenant's motive in placing fixtures on the demised premises is for his own benefit, not to enhance his landlord's realty, and this is so even though the lease is silent on the subject. Particularly is this true where the personalty is annexed or appropriated to the demised premises for the purpose of carrying on a trade or business for profit thereon. *Bergh v. Herring-Hall-Marvin Safe Co.,* 136 *F.* 368, 373, 70 *L. R. A.* 756 (*C. C. A. 2nd Cir.* 1905) ; 36 *C. J. S.* (*Fixtures*), §§ 33 and 34, *pp.* 968, 970; 22 *Am. Jur.* (*Fixtures*), § 61, *p.* 775. It is also considered sound public policy to allow the tenant the greatest latitude to remove fixtures to encourage trade and industry. *Greenspan-Greenberger Co. v. Goerke Co.,* 111 *N. J. Eq.* 249, 251 (*Ch.* 1932) ; *Cameron v. Oakland County Gas & Oil Co.,* 277 *Mich.* 442, 269 *N. W.* 227, 107 *A. L. R.* 1142 (*Sup. Ct. Mich.* 1936). These considerations have led the courts to place special emphasis upon the element of intention as to the ownership of fixtures where the claimants are landlord and tenant. *Vide* 22 *Am. Jur.* (*Fixtures*), § 40, *p.* 749.

So today it is the general rule, in the absence of an agreement to the contrary, that a tenant may remove whatever he has erected or installed for the purpose of carrying on trade, usually referred to as trade fixtures, provided they can be severed from the freehold without material injury thereto, and that such removal is effected before he yields possession of the premises. 36 *C. J. S.* (*Fixtures*), § 38, *p.* 973; 1 *Thompson on Real Property* (*Per. ed.*), § 208, *p.* 336. As a general rule, an article may be regarded as a "trade fixture" if annexed for the purpose of aiding in the conduct by the tenant of a trade or business exercised on the demised premises for

the purpose of pecuniary profit, it being accessory to the enjoyment of his term. To constitute any chattel that has been attached to the freehold a "trade fixture," it is only necessary that it be devoted to what is known as a trade purpose, and the form or size of the annexed chattel is immaterial. *Baker v. McClurg,* 198 *Ill.* 28, 64 *N. E.* 701 *(Sup. Ct.* 1902); 36 *C. J. S. (Fixtures),* § 38(b), *p.* 975; 1 *Thompson on Real Property (Per. ed.),* § 208, *p.* 335. *Cf. Greenspan-Greenberger Co. v. Goerke Co., supra.*

In holding that the installations in question had become a part of the real estate and not removable, the court below leaned heavily upon the institutional theory exemplified in *Smyth Sales Corp. v. Norfolk B. & L. Ass'n,* 116 *N. J. L.* 293, 298 *(E. & A.* 1935), but that principle is applicable to owner, mortgagee and conditional seller situations and has not been extended as a governing principle to the landlord-tenant relationship, where the subject is still a matter of bargain and intention. Furthermore, with the exception of the store on the ground floor, the building in question was to all intents and purposes an empty warehouse at the time of the original lease, and although the tenant adapted it as a plant for the processing, refrigeration and sale of meat, yet there is persuasive evidence that a part at least of the fixtures installed therein can be removed without material damage to the freehold, and if so removed the building again could be devoted effectually to its original use.

Referring to the second lease of the premises, made on April 14, 1939, the defendants ask us to apply the rule invoked in *Gerbert v. Trustees,* 59 *N. J. L.* 160 *(E. & A.* 1896), that if a tenant, at the end of his term, renews his lease, and thereby acquires a new interest in the premises, his right to remove improvements is forfeited, unless he takes the precaution to reserve such right in the renewal lease. There, however, the improvement was a sizable building which had been erected by the tenant during the term, and which under the old common law, as the court observed, became a part of the freehold. The rule stated in the cited case is generally referred to as the forfeiture rule which has been much criti-

cized in modern judicial literature, and in many cases has been either repudiated or limited in its application. The strongest denunciation of it being made by Justice Cooley in *Kerr v. Kingsbury,* 39 *Mich.* 150, 33 *Am. Rep.* 362 (*Sup. Ct. Mich.* 1878), whose opinion is printed in part in *Greenspan-Greenberger Co. v. The Goerke Co., supra. Vide United States v. Mallery,* 53 *F. Supp.* 564, 567 (*Dist. Ct. Wash.* 1944); 22 *Am. Jur.* (*Fixtures*), § 46, *p.* 760; *Note* 110 *A. L. R.* 484.

In any event it is commonly accepted today that trade fixtures are removable by a tenant so long as he remains in possession of the leasehold, provided they are capable of removal without material injury to the realty; notwithstanding his failure to preserve such right in a renewal lease. *Greenspan-Greenberger Co. v. The Goerke Co., supra; Radey v. McCurdy,* 209 *Pa.* 306, 67 *L. R. A.* 359, 103 *Am. St. Rep.* 1009 (*Sup. Ct. Pa.* 1904); *Ray v. Young,* 160 *Iowa* 613, 46 *L. R. A., N. S.,* 947 (*Sup. Ct. Iowa* 1913); *Andrews v. Williams,* 115 *Colo.* 478, 173 *P. 2nd* 882, 169 *A. L. R.* 471, 476 (*Sup. Ct. Colo.* 1946); *Notes* 110 *A. L. R.* 480; 22 *Am. Jur.* (*Fixtures*), § 48, *p.* 762. Also see *Bergh v. Herring-Hall-Marvin Safe Co., supra.* Furthermore we think that the second lease made between the parties on April 14, 1939, adequately protected the tenants in the foregoing respects for reasons presently to be stated.

We note in the original lease of 1929 the provision that at the end of the term the tenant "will deliver up the demised premises and its fixtures in as good condition *as on the date hereof* (wear and tear arising from a reasonable use of the same excepted)" (italics supplied). Obviously this does not apply to fixtures installed by the tenant after the date of the lease, but only to those on the premises "on the date" of the making of the lease. Covenants restricting tenants in the removal of ordinary trade fixtures are always strictly construed and cannot be extended by implication. *Fox v. Lynch,* 71 *N. J. Eq.* 537 (*Ch.* 1906).

The sixth paragraph of the second lease which provides that "additions and improvements" shall belong to the land-

lords, is not only confined to those thereafter made, but also distinguishes this type of permanent structural addition to the building from the trade fixtures placed therein by the tenant which, according to the twenty-seventh paragraph of the same lease, may be removed by him if such removal "does. not materially damage the premises."

 Since there was no prohibition against the removal of such fixtures by the tenant contained in the original lease, and the second lease provides for such removal under the stated condition, we conclude that this establishes the lessee's right to such trade fixtures as can be so removed.

 Therefore, inasmuch as it appears from the testimony of the experts that much of the fixtures in question could be removed without causing material damage to the freehold, the decree below is modified so as to exclude from the sale of the premises thereby ordered to be sold, such of the trade fixtures as can be so removed. And to that end this cause is remanded to the Chancery Division of the Superior Court for the purpose of determining, according to its practice, the fixtures so to be excluded from said sale, the terms of their removal from the premises, the requirements necessary for otherwise returning the premises to the condition required by the letting, and for further proceedings in conformity with this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*Opposed*—None.