**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0152-22

922 RVD, LLC, INNOVATIVE
COSMETIC CONCEPTS, LLC,
and COLOR STREET, LLC,

      Plaintiffs-Appellants,

v.

BC INTERNATIONAL
GROUP, INC.,

      Defendant-Respondent.

_____

Argued January 23, 2024 – Decided July 17, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3678-20.

Leonard E. Seaman argued the cause for appellants (The Law Offices of Richard Malagiere, attorneys; Richard Malagiere, of counsel; Leonard E. Seaman, on the briefs).

Scott R. Matthews argued the cause for respondent (Windels Marx Lane & Mittendorf, LLP, attorneys; Scott R. Matthews and Aryana P. Badery, on the brief).

PER CURIAM

This appeal arises from a dispute between plaintiffs 922 RVD, LLC (922 RVD); Innovative Cosmetic Concepts, LLC (ICC); and Color Street, LLC (Color Street), and defendant BC International Group, Inc. (BCI), regarding the alleged breach of a lease of a commercial property in Totowa.  When defendant did not vacate the property at the termination of the lease, plaintiffs filed a four-count complaint alleging breach of the lease (count one), breach of the implied duty of good faith and fair dealing (count two), fraudulent misrepresentation (count three), and tortious interference with prospective economic advantage (count four).  Defendant filed a counterclaim seeking the return of its security deposit and attorneys' fees.

Plaintiffs appeal from a June 21, 2022 order granting defendant summary judgment and dismissing their claims with prejudice, granting defendant's counterclaim, and awarding defendant attorneys' fees.  Plaintiffs also appeal from the court's September 7, 2022 order denying their motion to alter or amend the court's summary judgment order with respect to the award of attorneys' fees.  After considering all of plaintiffs' arguments against the record and as applied to the applicable standards of review and relevant substantive legal principles, we affirm the portion of the court's order granting defendant's application for

2

summary judgment, reverse and vacate the portion of the court's order awarding defendant attorneys' fees, and remand for the court to make further factual findings and legal conclusions with the respect to the court's determination defendant was entitled to attorneys' fees.

I.

We begin by reviewing the facts in the motion record, viewing them in a light most favorable to plaintiff, the non-moving party.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Plaintiffs ICC and Color Street are affiliated companies in the business of manufacturing, distributing, and selling adhesive nail polish strips, or "stick on nails," and defendant is in the luxury outer garment business "specializing in fur apparel and fur services."

Prior to the COVID-19 pandemic, ICC and Color Street sought to expand their business into Canada with a target expansion date of summer 2020.  During the pandemic, however, the companies experienced an increase in domestic sales and could not support the volume of sales and a Canadian expansion with existing infrastructure.  As a result, plaintiff created 922 RVD, a single purpose entity, and affiliate of ICC and Color Street.  922 RVD subsequently entered into a purchase and sale agreement (PSA) with 922 Riverview Drive Associates,

3

LLC, an affiliate of defendant, to acquire the property located at 922 Riverview Drive in Totowa, with time being of the essence.

A. The PSA

922 RVD and 922 Riverview Drive Associates closed on the property on July 27, 2020, with a purchase price of $15,250,000. The PSA provided 922 RVD's purchase included:

> All improvements and fixtures located on the Land, including, without limitation: (i) all structures affixed to the Land; (ii) all apparatus, equipment, and appliances used in connection with the operation or occupancy of the Land; and (iii) all facilities used to provide any services to the Land and/or the structures affixed thereto . . . excluding those fixtures owned by the occupants of the Real Property or by vendors of the Improvements, if any.
>
> [(Emphasis added).]

Further, 922 RVD agreed to purchase the property "in its existing condition 'AS-IS, WHERE-IS, AND WITH ALL FAULTS' as of the Effective Date of [the] agreement with respect to all facts, circumstances, conditions and defects, and [defendant] has no obligation to determine or correct any such facts, circumstances, conditions, or defects or to compensate [plaintiffs] for same."

The PSA acknowledged both parties were represented by counsel, entered into the PSA with advice of counsel, and provided:

A-0152-22

If any action is brought by either Party against the other in connection with or arising out of this Agreement, or any of the documents and instruments delivered in connection herewith or in connection with the transactions contemplated hereby, the prevailing party shall be entitled to recover from the other party its reasonable out-of-pocket costs and expenses, including, without limitation, reasonable attorneys' fees, incurred in connection with the prosecution or defense of such action.

[(Emphasis added).]

The PSA described a "Party" as "[s]eller, [p]urchaser, their respective constituent entities and their respective successors, assigns, and legal representatives," and stated, "[e]xcept as otherwise provided in this [a]greement, no representations, warranties, covenants, or other obligations of [s]eller or [p]urchaser set forth in this [a]greement shall survive the [c]losing hereunder . . . and no action based thereon shall be commenced after the [c]losing." (Emphasis added).

The PSA also included a "Leaseback" provision wherein "simultaneous with the [c]losing," plaintiffs agreed to lease the property to defendant for three months and acknowledged defendant would "continue to operate its business." The parties attached the lease agreement to the PSA, and, as such, at the time of closing, plaintiff 922 RVD became defendant's landlord.

5

B. The Lease and Holdover

The parties agreed the identified lease term would be August 1, 2020 to October 31, 2020, and could not be extended. The parties negotiated and agreed, however, in the event of a holdover, defendant would pay $75,000 "for each month Tenant occupie[d] the Leased Premises after termination of the Lease." Defendant also paid a $56,000 security deposit, which 922 RVD agreed to return within fourteen days of the termination of the lease, so long as defendant was not in default.

The lease provided from September 1, 2020 through October 31, 2020, the parties would co-occupy a portion of the warehouse on the premises. Specifically, it stated:

> Landlord shall retain possession of a portion of the warehouse of the Leased Premises and storage space for Landlord's Inventory and equipment which is approximately 53,241 square feet and constituting 43% of the premises . . . Landlord accepts possession of the warehouse space as aforesaid in "as-is, where-is" condition as of August 1, 2020.
>
> [(Emphasis added).]

The same paragraph also stated, "[a]ny property left behind by the Tenant shall be deemed abandoned and the removal of same, if necessary, shall be the sole responsibility of the Landlord," with the exception of two boilers, which

6

tenant would retain ownership of and could continue to store in the warehouse during the tenancy. Finally, the lease provided, "[t]his [a]greement terminates and supersedes all prior understandings or agreements on the subject matter hereof."

Due to construction delays and increased costs, defendant abandoned its plan to relocate, and instead, on November 11, 2020, executed a final lease to occupy a separate nearby property. As such, defendant remained on the subject premises beyond the October 31, 2020 lease termination date and sent plaintiffs a check for $83,998.82, representing holdover rent and associated charges. Thereafter, on November 30, 2020, defendant vacated the premises but left racking built into the ceiling and floor.

C. The Lease Dispute

On November 25, 2020, plaintiff commenced this action alleging defendant's holdover delayed their Canadian expansion resulting in two months of lost sales. The court extended discovery three times resulting in 527 days of discovery. On February 9, 2022, the court extended the discovery end date to June 2, 2022, and set trial for June 13, 2022.

On April 15, 2022, defendant moved for summary judgment with respect to both plaintiffs' claims and its counterclaim. On May 2, 2022, prior to

A-0152-22

defendant's motion being heard, the court extended discovery for the third and final time, ordered all discovery to be completed by June 24, 2022, and scheduled trial for July 5, 2022. On June 21, 2022, after considering the parties' written submissions and oral arguments, the court granted defendant's motions in a lengthy oral decision and entered a conforming order the same day.

In concluding there were no disputed issues of material fact warranting the denial of defendant's applications, the judge considered the motion record, including the PSA and lease, as well as several certifications, and acknowledged he derived "a number of facts . . . directly from the certification of Aristotelis Spyropoulos," defendant's principal. The judge also explained although plaintiffs disputed certain facts, they did so "in a very unspecific, general way by asserting, '[d]efendant's own statements incorporated in the motion record raise issues of defendant's credibility, which is an issue of fact for the trier of fact.'"

The judge noted, however, "[n]othing more [was] provided. There is no specific reference to any material in the motion record as to why these facts should be considered disputed or [a] specific description of the credibility issue." The judge explained he did not make credibility findings, but rather "merely address[ed] statements by Spyropoulos that are not directly refuted in

A-0152-22

any way," and noted, under <u>Brill</u>, a party "must do more than show that there is some metaphysical doubt as to the material facts."

With respect to count one of the complaint, breach of the lease, the judge noted plaintiffs initially "focuse[d] primarily on the defendant's one-month holdover," but, in opposition to defendant's motion, conceded defendant's holdover was not a breach. The judge explained plaintiffs changed their argument and contended defendant breached the lease by leaving racking attached to the floor and ceiling and trash throughout the property. The judge stated, even construing the pleadings liberally, plaintiffs' "new theory of breach of the lease now asserted for the first time . . . cannot be found in the complaint," and plaintiffs did not file a motion to amend. The judge nonetheless considered plaintiffs' newly minted argument on the merits and found the language of the PSA and lease to be clear and unambiguous, and as such, concluded plaintiffs failed to raise a triable issue of fact with respect to defendant's alleged breach.

Specifically, the judge referenced various specific provisions of the PSA which provided 922 RVD agreed to purchase the property with all fixtures and in "as-is, where-is" condition, and acknowledged "seller has no obligation to determine or correct any such facts, circumstances, conditions, or defects or to compensate purchaser for the same." Additionally, the judge noted "the

condition of the warehouse, including the racking, was well-known" to 922 RVD "because its representatives evaluated and toured the property before closing."

The judge explained that following the sale, the parties' rights and obligations were controlled by the lease terms and plaintiffs acknowledged the lease made clear they "accept[ed] possession of the warehouse space is as-is, where-is condition."  The judge rejected plaintiffs' argument the lease did not address how the tenant was to leave the property and found the lease "expressly provides that any property left behind shall be deemed abandoned property with the removal of same being the sole responsibility of the landlord."  Further, the judge found "the clear language of both the PSA and lease make it clear that the racking at issue belonged to plaintiff, 922 RVD."

With respect to count two, breach of the implied covenant of good faith and fair dealing, the judge stated plaintiffs' claim was "substantially, if not virtually, identical" to count one, and explained count two "fails to allege the elements needed to prevail on a breach of the implied covenant of good faith and fair dealing, let alone facts to support this claim."  The judge explained the complaint "does not even mention malice or motive, a required element of this cause of action," and found "[t]here are simply no allegations in the complaint or facts in the motion record from which it can be reasonably inferred that a bad

motive existed." The judge also noted, "[i]t is axiomatic that summary judgment cannot be defeated if the non-moving party does not offer any concrete evidence from which a reasonable juror could return a verdict in his favor."

With respect to count three, fraudulent misrepresentation, the judge explained plaintiff alleged defendant knew or should have known at the time the parties executed the PSA, at the time of closing, and at the beginning of the lease, plaintiffs "were completely relying upon [defendant] vacating the property on or before October 31, 2020[,] to implement their business plan." The judge stated, however, plaintiffs did not "allege any specific statement made by [defendant] that could be construed as a fraudulent misrepresentation," or present evidence defendant did not intend, at the time of the lease, "make its best efforts to vacate the end of the lease term." The judge also noted plaintiffs did not plead with the particularity required for a claim of fraud and "failed to produce evidence raising a triable issue of fact for each element" of fraudulent misrepresentation.

Further, the judge found plaintiffs failed to present evidence "they changed their behavior in any way based on their expectation that [defendant] would vacate" the property by October 31, 2020, and did "not even plead any action they took [in] reliance on [defendant]'s alleged misrepresentation." The

11

judge also explained even if plaintiffs relied on defendant's representation with respect to vacating the premises by the end of the lease term, such reliance would have been unreasonable because plaintiffs were "well aware" of the negotiated holdover provision.

Addressing count four of the complaint, tortious interference with prospective economic advantage, the judge concluded based on the motion record, "[n]o rational fact finder" could find for plaintiff. The judge explained the parties were not competitors, were not in the same business, and defendant "ha[d] no articulable motive to interfere with [plaintiffs'] business or its expansion into Canada." The court noted plaintiffs' true complaint was defendant's holdover, a negotiated provision of the lease, and thus granted defendant's motion as to count four.

The judge next granted defendant's application with respect to its counterclaim as he found defendant tendered the security deposit as required and was not in default at the time the lease terminated. The judge rejected plaintiffs' argument the security deposit did not have to be returned due to the condition of the property because plaintiffs' allegations, "even if true, do not excuse the landlord's failure to return the security deposit." The judge stated, "the lease does not require that the tenant leave the property in broom-swept

condition" and "actually provides that any property left behind by the tenant shall be deemed abandoned and the removal of same, if necessary, shall be the sole responsibility of the landlord."

Finally, the judge awarded attorneys' fees to defendant, and in doing so, rejected plaintiffs' argument the fee provision of the PSA was extinguished upon closing. He noted the PSA allowed the prevailing party to recover attorneys' fees if an action is brought "by either party against the other in connection with or arising out of this agreement or any of the documents and instruments delivered in connection herewith or in connection with the transactions contemplated hereby." The judge explained plaintiffs' claims arose under the lease and found the lease to be "a document and instrument delivered in connection with the PSA," and concluded defendant was entitled to attorneys' fees because the lease was "undeniably contemplated and required by the PSA."

Subsequently, defendant's counsel submitted a certification of services seeking $205,438.77 in attorneys' fees and costs, $2,799.92 prejudgment interest on the security deposit, and $857.44 of utility reimbursement. Plaintiffs thereafter moved to "alter or amend" the order granting summary judgment with respect to the attorneys' fee award arguing defendant was not entitled to such

13

fees under the PSA because the provision expired at closing and because defendant was not a formal party to the PSA.

After considering the parties written submissions and oral arguments the judge denied plaintiffs' motion, stating in a September 7, 2022 oral decision, "[i]n essence, the instant motion filed by the plaintiffs is a motion for reconsideration of that part of the [s]ummary [j]udgment [o]rder that pertained to an awarding of fees." The judge considered on the merits plaintiffs' argument defendant was not entitled to attorneys' fees because BCI was not a party to the PSA. The judge explained, "[n]ow, for the first time, the parties concede and agree that the formal parties to the PSA are plaintiff, 922 RVD, LLC and 922 Riverview Drive Associates, LLC, a non-party to this litigation."

The judge stated, however, "defendant's initial Statement of [u]ncontested [m]aterial [f]acts . . . clearly gives the impression that the defendant was a party to the PSA," and noted, "plaintiffs took pains [in the complaint] to link [BCI] with 922 Riverview Drive Associates, the seller in the PSA." Specifically, the judge explained plaintiffs' complaint alleged 922 Riverview Drive Associates and BCI "share common ownership," which defendant admitted to its answer, and referred to BCI as 922 Riverview Drive's "affiliate."

14

The judge further stated the complaint "consistently conflated" defendant BCI and its affiliate 922 Riverview Drive Associates, such that plaintiffs' argument they are "so distinct that they can abate their obligation under the fee shifting provision of the PSA" is without merit. Additionally, the judge noted plaintiffs executed the leaseback provision "in favor of" BCI, which, the judge stated, made it clear "from the parties' course of dealing that the landlord plaintiff treated defendant, [BCI], as indistinguishable from the PSA seller, 922 Riverview Drive Associates, LLC."

The judge stated, "the PSA defined the terms 'party' and 'parties' to include seller, purchaser, their respective constituent entities and their respective successors, assigns and legal representatives,'" and concluded "the parties' course of conduct and plaintiff[s'] pleadings make it clear that [BCI] was either a constituent entity or an assignee of 922 Riverview Drive Associates sufficient to bring it within the PSA's definition of a 'party.'"

The judge next addressed the fee computation and found defendant's counsel fees were reasonable when "[m]easured against the potential damages avoided and the amounts recovered." The court also concluded defendant's counsel sufficiently described the backgrounds and qualifications of the

associates and legal assistants who worked on the matter to satisfy RPC 1.5(a)(7).

Accordingly, the court denied plaintiffs' motion for reconsideration and entered an order awarding defendant $56,000 for its security deposit; $19,052.88 and $857.44 for its utility payments; $2,799.92 in pre-judgment interest; and $205,438.77 in attorneys' fees and costs. This appeal followed.

II.

In their first point, plaintiffs contend the court erred in granting summary judgment because discovery was not yet complete. Plaintiffs explain they advised the court defendant's principal had been deposed six days prior to oral argument on defendant's motion for summary judgment, and additional depositions were scheduled for other representatives of defendant. As such, plaintiff argues the motion was premature as they did not have the opportunity to provide a complete record.

Generally, summary judgment is premature when the opposing party has not yet had an opportunity to conduct discovery and develop facts on which it intends to base its claims. Friedman v. Martinez, 242 N.J. 449, 472 (2020). However, "'summary judgment is not premature merely because discovery has not been completed, unless' the non-moving party can show 'with some degree

of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Ibid. (first quoting Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015); then quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)).

Here, the parties engaged 527 days of discovery which included interrogatories, certifications, and document production requests. The record indicates plaintiffs did not depose defendant's principal until after defendant filed its motion for summary judgment, and deposed two of defendant's representatives after oral argument on the motion. The record also indicates plaintiffs did not seek an adjournment of the motion or of trial.

Additionally, plaintiffs failed to identify with any degree of particularity, both before the court and before us, what information uncovered in those depositions would create an issue of material fact precluding summary judgment and does not identify, as required, the likelihood further discovery will "supply the missing elements of the cause of action," Friedman, 242 N.J. at 472 (internal quotation omitted), or raise a triable issue of fact with respect to their claims. Because plaintiffs' general assertions regarding incomplete discovery are insufficient to overcome a motion for summary judgment, see Badiali, 220 N.J. at 555, and because there exists no issues of material fact, we are satisfied the

A-0152-22

court did not err in proceeding with defendant's motions and ultimately granting them.

III.

Plaintiffs next argue the court erred in granting summary judgment as to each count of the complaint and defendant's counterclaim. With respect to count one and defendant's counterclaim, plaintiff argued defendant breached the lease by abandoning the racking system throughout the property when defendant vacated. Plaintiffs contend the lease is the "operative document" between the parties, rather than the PSA, and acknowledge under the lease, they accepted the property in "as-is, where-is" condition as of the date of sale and beginning of the lease. Plaintiffs assert, however, the lease does not state they will accept delivery of the property in "as-is, where-is" condition at the termination of the lease and argue defendant damaged plaintiffs by leaving behind racking.

Plaintiffs also contend the court erred in concluding plaintiffs owned the racking system in the property because the court failed to distinguish between "fixtures" and "trade fixtures." Specifically, plaintiffs contend the racking system was a trade fixture, rather than a general fixture, and therefore they did not purchase the racking system at the time of closing.

18

Plaintiffs next argue the judge erred in granting defendant's motion with respect to count two, breach of the implied covenant of good faith and fair dealing, because he relied on the certification of defendant's principal and discounted plaintiffs' "plausible version" of events causing defendant's holdover. Specifically, plaintiffs contend defendant's principal may have been "offended at the way he was treated during the PSA transaction by [p]laintiff's principal . . . and felt he was being pushed and bullied by him" while negotiating the PSA and lease. As such, plaintiffs contend "a trier of fact could have concluded [defendant] dragged its feet, lacked urgency or was indifferent to the stated purpose of the [l]ease to 'get even' with . . . 922 RVD."

With respect to count three, plaintiffs broadly argue defendant "represented that it would vacate [the property] in a timely fashion no later than October 31, 2020," and that such representation was false as "[defendant] knew it could not get out in time, and its limited efforts show it never intended to do so." Plaintiffs also assert the court should not have taken defendant's principal "at his word" when he stated in his certification defendant had every intention of vacating the property at the termination of the lease as "[n]othing [defendant] did supports that assertion."

Plaintiffs further contend they relied on defendant's false representation as they "rebuilt their Canadian launch strategy around [defendant's] need to remain on the [p]roperty," and "[b]ased on the [d]efendant's indications that it would vacate the [p]roperty prior to November 1, 2020, the hope was that the [p]roperty would be vacated sometime in September 2020." Plaintiffs assert, however, defendant's holdover resulted in a delay of plaintiffs' Canadian expansion.

As to count four, plaintiffs argue the court erred in dismissing its claim for tortious interference with economic advantage as they "undoubtedly showed a protected right to their pursuit of business in Canada," and the issue of malice relating to this claim "called for a determination of defendant's state of mind which is an issue of fact that precluded summary judgment." We disagree with all of these arguments.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny

20

v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015). The burden of establishing a breach of contract rests with the party who asserts the breach. Nolan v. Control Data Corp., 243 N.J. Super. 420, 438 (App. Div. 1990).

If contractual terms are clear, "[courts] must enforce the contract as written." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999). Further, the contract is to be interpreted "'in accord with justice and common sense.'" Homann v. Torchinsky, 296 N.J. Super. 326, 334 (App. Div. 1997) (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)).

If, however, the terms of a contract are ambiguous, courts "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." Barila v. Bd.

21

of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (internal citations omitted). Additionally, "[t]he judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

In general, "a fixture is an item of property that 'has been so annexed to the realty that it is regarded as part and parcel of the land.'" GMC v. City of Linden, 150 N.J. 522, 527 n.1 (1997) (quoting Lehmann v. Keller, 454 Pa. Super. 42 (Pa. Super. Ct. 1996)). "Historically, personal property becomes a fixture when it is physically fastened to or connected with the land or building and the fastening or connection was done to enhance the utility of the land or building." Black's Law Dictionary 782 (11th ed. 2019). "It is an ancient maxim . . . that whatsoever is fixed to the realty is thereby made a part of the realty to which it adheres, and partakes of all of its incidents and properties." GMC, 150 N.J. at 534 (quoting Handler v. Horns, 2 N.J. 18 23-24 (1949)). A "trade fixture" is "[r]emovable personal property that a tenant attaches to leased land for business purposes, such as a display counter," Black's Law Dictionary 782 (11th ed. 2019), and is an "exception to the ancient maxim" of fixtures becoming part of the realty to which they are attached, GMC, 150 N.J. at 534.

Against these principles, we agree with the judge and conclude there are no issues of material fact and defendant was entitled to summary judgment with respect to both plaintiffs' breach of lease claim and defendant's counterclaim. Indeed, the PSA stated plaintiffs purchased "[a]ll improvements and fixtures located on the [l]and," which included, "without limitation," "(i) all structures affixed to the Land; [and] (ii) all apparatus, equipment, and appliances used in connection with the operation or occupancy of the [l]and." Further, plaintiffs purchased the property "in its existing condition 'AS-IS, WHERE-IS, AND WITH ALL FAULTS'" as of the date of sale, and agreed defendant "has no obligation to determine or correct any such facts, circumstances, conditions, or defects or to compensate [plaintiffs] for same." Accordingly, it is clear from the terms of the PSA plaintiffs' purchase of the property included the racking system, and plaintiff has identified no provision of the PSA or lease reasonably supporting a contrary result.

We are unpersuaded the classification of the racking system constituted a genuine issue of material fact precluding summary judgment. Indeed, if the racking system constituted a fixture, it became plaintiffs' property regardless of the express language in the PSA as "whatsoever is fixed to the realty is thereby made a part of the realty to which it adheres." GMC, 150 N.J. at 534 (quoting

Handler, 2 N.J. at 23-24). Further, accepting plaintiffs' argument the racking system was a trade fixture, the express and unambiguous language in the PSA states clearly the system became plaintiffs' property when plaintiffs purchased the property in "as-is, where-is" condition, including, "without limitation," all improvements and fixtures, without exception.

Additionally, after the sale, the lease became the governing document between the parties and provided defendant would occupy 43% of the premises' warehouse, including where racking was located, for the final two months of the three-month lease. Plaintiffs "accept[ed] possession of the warehouse space as aforesaid in 'as-is, where-is' condition as of August 1, 2020," and agreed "[a]ny property left behind by [defendant] shall be deemed abandoned and the removal of same, if necessary, shall be the sole responsibility of [plaintiffs]." Thus, language of the lease clearly and unambiguously states plaintiffs took possession of a portion of the premises, including the racking, in "as-is" condition as of August 1, 2020, and accepted responsibility for any property left behind, both at the time plaintiffs co-occupied the space and at the termination of the lease.

Because we agree with the judge's decision defendant did not breach the lease, we also agree defendant was entitled to summary judgment with respect

24

to its counterclaim seeking the return of its security deposit. As noted, the lease provided plaintiffs would return defendant's security deposit so long as defendant was not in default. Because defendant was neither in default nor breach of the lease, the court properly granted defendant's counterclaim.

With respect to count two, we note, "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). Good faith, however, "defies precise definition." Ibid. Under the Uniform Commercial Code, good faith is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Ibid. (quoting N.J.S.A. 12A:2-103(1)(b)). A party acting in good faith does not "violate community standards of decency, fairness or reasonableness." Ibid. (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001)). Indeed, the covenant of good faith and fair dealing "mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Seidenberg v. Summit Bank, 348 N.J. Super. 243, 253 (App. Div. 2002) (quoting Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997)).

"Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Brunswick Hills, 182 N.J. at 225 (quoting Wilson, 168 N.J. at 251). The party alleging a breach of the covenant "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Ibid. (internal citations omitted). Generally, "[s]ubterfuges and evasions" of contract performance violates the covenant of good faith and fair dealing "even though the actor believes his conduct to be justified." Ibid. (quoting Restatement (Second) of Conts., § 205 cmt. d. (Am. L. Inst. 1981)). Although a defendant can be liable for a breach of the implied covenant even "without violating an express term of a contract," Sons of Thunder, 148 N.J. at 422-23, the implied duty does not "alter the terms of a written agreement," Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 366 (1992).

Here, we are similarly unpersuaded the court erred in granting defendant summary judgment as to count two. First, as the judge concluded, plaintiffs' complaint did not plead or establish "bad motive or intention," Brunswick Hills, 182 N.J. at 225, and presented no facts defendant's actions "destroy[ed] or injur[ed] the right of [plaintiffs] to receive the fruits of the contract," Sons of

26

Thunder, 148 N.J. at 420. Indeed, plaintiffs received the fruits of the contract as defendant paid plaintiffs monthly rent and the agreed upon holdover rent. Defendant was not required to forego its contractual right to holdover for the benefit of plaintiffs' business plans.

Additionally, although plaintiffs argue the court erred in relying on the certification of defendant's principal, plaintiffs failed to present any evidence establishing a dispute of material fact with respect to the certification. We are unpersuaded, on the record before us, a trier of fact could conclude defendant "dragged its feet, lacked urgency or was indifferent to the stated purpose of the [l]ease to 'get even' with 922 RVD." As the judge found, there is simply nothing in the record, and plaintiffs fail to identify anything reasonably supporting a contrary inference, to support the alternative narrative defendant's principal was "offended," "bullied," or "insulted," and, if so, acted in bad faith. See Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (noting "[c]ompetent opposition [to summary judgment] requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments'") (internal citations omitted).

As to count three, to succeed on their fraudulent misrepresentation claim, plaintiffs must establish: "(1) a material misrepresentation of a presently

27

existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 246 (App. Div. 2007). Additionally, "Rule 4:5-8(a) requires that fraud be pled in the particulars." Piscitelli v. Classic Residence by Hyatt, 408 N.J. Super. 83, 116 (App. Div. 2009).

We are again unpersuaded the court erred in granting defendant summary judgment as to count three. In short, we agree with the judge plaintiffs did not present evidence establishing a claim of fraudulent misrepresentation, see Triffin, 394 N.J. Super. at 246, and, separately, plaintiffs' allegations, as plead, lack the particularity required by Rule 4:5-8(a). Specifically, plaintiffs do not identify what statement defendant fraudulently misrepresented and what actions plaintiffs took as a result of such reliance. Rather, plaintiffs merely state defendant "indicat[ed]" it would vacate the property prior to November 1, 2020, and plaintiffs "hope[d] . . . the [p]roperty would be vacated sometime in September 2020."

We also agree with the judge plaintiffs' reliance on defendant's "indications" it would vacate the premises prior to or on October 31, 2020 was not reasonable. Indeed, plaintiffs were aware the lease term ended on October

28

31, 2020, rather than "sometime in September," and were also aware the lease contained a holdover provision, putting plaintiffs on notice defendant may remain in the premises beyond October 31, 2020. Because plaintiffs did not establish reasonable reliance, the court properly granted defendant summary judgment as to count three of the complaint. See Triffin, 394 N.J. at 249 ("Without reasonable reliance on a material misrepresentation, an action in fraud must fail.").

As to count four, to establish a claim for tortious interference with a prospective economic advantage, a "plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendant['s] malicious interference, and that it suffered losses thereby." Lamorte Burns & Co. v. Walters, 167 N.J. 285, 305-06 (2001) (citation omitted). "[I]n any action based on tortious interference . . . [the] interference [must] be malicious." Kopp, Inc. v. United Techs., 223 N.J. Super. 548, 559 (App. Div. 1988).

We are unconvinced plaintiffs raised a dispute of material fact sufficient to warrant the denial of defendant's motion for summary judgment on this count as well. As the judge noted, the parties are not in the same business, are not competitors, and, as discussed, plaintiff did not present any credible evidence

29

establishing defendant's malicious motive for interfering with plaintiffs' business expansion.

Additionally, plaintiffs' argument defendant tortiously interfered with and delayed plaintiffs' business expansion is unpersuasive because it is premised on defendant's one-month holdover. Such holdover, however, was provided for in the lease, and plaintiffs did not cite any case or authority in which a party tortiously interfered with another simply by exercising a contractual right.

IV.

As noted, the court awarded defendant $205,438.77 in attorneys' fees pursuant to the PSA. Although plaintiffs' complaint alleged causes of action related to the lease, the court concluded the award was proper because the PSA allowed for the collection of attorneys' fees in a dispute arising out of the PSA, "or any of the documents and instruments delivered in connection herewith or in connection with the transactions contemplated hereby." The court also concluded defendant was a party to the PSA, and thus eligible to collect fees, because "the parties' course of conduct and plaintiffs' pleadings make it clear that [defendant] was either a constituent entity or assignee of 922 Riverview Drive Associates sufficient to bring it within the PSA's definition of a 'party.'"

On this point, we first highlight the relevant procedural irregularities, which the motion judge conscientiously acknowledged during oral argument on plaintiffs' motion for reconsideration. In its counterclaim, defendant made a general demand for attorneys' fees, but did not refer to the relevant PSA provision. Subsequently, in its motion for summary judgment, defendant originally sought attorneys' fees pursuant to N.J.S.A. 46:8-21.1, but in reply to plaintiffs' opposition, conceded that statute was inapplicable, and instead sought attorneys' fees under the PSA.

Specifically, defendant contended the attorneys' fees provision of the PSA applied to actions involving the lease because it was a "document[] and instrument[] delivered in connection" with the PSA and "in connection with the transactions contemplated" by the PSA. Neither in its summary judgment motion nor at oral argument, however, did defendant address the fact it was not a formal party to the PSA, a condition precedent to the recovery of attorneys' fees under the agreement.

On reconsideration, plaintiffs argued the PSA states the parties' claims, including those for attorneys' fees, extinguished at the closing as the PSA provided "no representations, warranties, covenants or other obligations of [s]eller or [p]urchaser set forth in this [a]greement shall survive the [c]losing

31

hereunder, except as otherwise provided in this [a]greement, and no action based thereon shall be commenced after the [c]losing," and the lease did not allow for such fee shifting. Additionally, plaintiffs argued defendant was not entitled to attorneys' fees under the PSA because defendant was not a party to the PSA. Specifically, plaintiffs contended the parties to the PSA were 922 Riverview Drive Associates, as seller, and 922 RVD, as purchaser, and defendant BCI was not a party as defendant was not "the seller, purchaser, their respective constituent entities [or] their respective successors, assigns, [or] legal representatives."

For its part, defendant argued the fee shifting provision of the PSA did not extinguish at closing as the terms of the attorneys' fees provision provided for the collection of fees in a dispute arising out of the PSA "or any of the documents and instruments delivered in connection herewith or in connection with the transactions contemplated hereby," and the lease constituted such a document, instrument, and transaction. Additionally, defendant acknowledged it was not a formal party to the PSA, but argued plaintiffs "treated" defendant as a "de facto" party to the PSA and contended its status as a non-party to the PSA was of no moment because 922 Riverview Drive Associates, the "special purpose entity"

32

identified as the seller in the PSA, and defendant are "affiliates" with a common ownership.

Before us, the parties reprise the arguments made before the motion court.[1] Notably, plaintiffs do not challenge the quantum of the award, or the lodestar calculation, but rather contend the court erred in concluding defendant was entitled to fees.

We disturb a court's award of attorneys' fees "'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001)). We also apply the abuse of discretion standard when reviewing an order denying reconsideration. Gold Tree Spa, Inc. v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J.

---

[1] In their initial brief before us, plaintiffs argue defendant's fee application was improper because it included claims by two New York attorneys who were not admitted pro hac vice in this matter and did not submit affidavits to support their claim for fees. In its reply brief, however, plaintiffs largely abandon this argument in light of Opinion 60 issued by the Committee of the Unauthorized Practice of Law on December 23, 2022, and we accordingly do not address it.

568, 588 (2015) (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)).

"Although New Jersey generally disfavors the shifting of attorneys' fees, a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." <u>Packard-Bamberger</u>, 167 N.J. at 440. Thus, because no court rule or statute is applicable here, defendant may only recover attorneys' fees if provided by the PSA, as the lease only allows for plaintiffs' recovery of attorneys' fees.

As noted, when contractual terms are ambiguous, courts "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." <u>Barila</u>, 241 N.J. at 616 (internal citations omitted). A contract provision is ambiguous where it is "subject to more than one reasonable interpretation." <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 200 (2016).

Under New Jersey law, extrinsic evidence may be considered to determine whether a contractual term is ambiguous. <u>Conway v. 287 Corporate Ctr. Associates</u>, 187 N.J. 259, 268-69 (2006). Although the parol evidence rule generally "prohibits the introduction of evidence that tends to alter an integrated written document[,]" <u>id.</u> at 268, "New Jersey follows an expansive approach on

A-0152-22

the use of parol evidence," <u>YA Glob. Invs., LP v. Cliff</u>, 419 N.J. Super. 1, 12 (App. Div. 2011).

Under this expansive view "[e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement." <u>Conway</u>, 187 N.J. at 269 (alteration in original) (quoting <u>Atl. N. Airlines, Inc. v. Schwimmer</u>, 12 N.J. 293, 301 (1953)). Accordingly, considerations for the court in interpreting a contract "may 'include . . . the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct.'" <u>Ibid.</u> (quoting <u>Kearny PBA Local # 21 v. Kearny</u>, 81 N.J. 208, 221 (1979)). Such evidence may be utilized because "[t]he polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; . . . the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded." <u>Ibid.</u> (quoting <u>Schwimmer</u>, 12 N.J. at 301).

Importantly, "[s]uch evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said." <u>Ibid.</u> (quoting <u>Schwimmer</u>, 12 N.J. at 302). "[T]here is a 'distinction between

35

the use of evidence of extrinsic circumstances to illuminate the meaning of a written contract, which is proper, and the forbidden use of parol evidence to vary or contradict the acknowledged terms of an integrated contract.'" YA Glob. Invs., LP, 419 N.J. Super. at 12 (quoting Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 497 (App. Div. 1963)).

Against these principles, we conclude the judge correctly rejected plaintiffs' argument defendant was not entitled to attorneys' fees under the PSA because any such claim extinguished at closing under the terms of the PSA. Although the PSA provides "no representations, warranties, covenants or other obligations of [s]eller or [p]urchaser set forth in this [a]greement shall survive the [c]losing hereunder, except as otherwise provided in this [a]greement, and no action based thereon shall be commenced after the [c]losing," the agreement also states a prevailing party would be entitled to reasonable attorneys' fees "[i]f any action is brought by either [p]arty against the other in connection with or arising out of this [a]greement, or any of the documents and instruments delivered in connection herewith or in connection with the transactions contemplated thereby."

At the time of closing, the lease became the governing agreement between the parties. As the judge correctly found, the lease was a document delivered in

A-0152-22

connection with, and specifically contemplated by, the PSA and the purchase of the property. Indeed, the PSA included a negotiated leaseback provision, whereby the purchasers, upon closing, became landlord of defendant, and the lease was attached to the PSA. Because the lease arose out of the PSA, and the PSA expressly contemplated that agreement, a party's right to recover attorneys' fees in any lease dispute was not extinguished at closing.

That does not end our analysis, however. As noted, under the PSA, the "prevailing party" in an action may recover attorneys' fees, and the PSA defines a "[p]arty" only as "[s]eller, [p]urchaser, their respective constituent entities and their respective successors, assigns, and legal representatives." As it was not a named party to the PSA, defendant must therefore be found to be a constituent entity, successor, assignee, or legal representative of 922 Riverview Drive to be considered a party to the PSA and thus entitled to fees.

Before us, defendant maintains the court correctly concluded it was a party to the PSA because it was either a "constituent entity" or "assignee." It supports this legal conclusion by further contending it was an affiliate of 922 Riverview Drive Associates, and the parties conflated the two entities during the litigation. Defendant does not contend, however, it was a "successor" or "legal representative" of 922 Riverview Drive Associates and our analysis therefore

37

focuses on whether the motion record supported the court's view that defendant qualified as either a constituent entity or assign of 922 Riverview Drive Associates.

Turning to the term "assign" we find nothing ambiguous about that term as it has a clear meaning under New Jersey law. An "assignment" has been described as "the transfer of the whole interest of the assignor." Stark v. Nat'l Research and Design Corp., 33 N.J. 315, 320 (App. Div. 1954). It has also been defined to transfer a "contract right," and such transfer "extinguishes the right in the assignor and recreates the same right in the assignee." 9 Corbin on Contracts § 47.1 (2024). Nothing in the record suggests 922 Riverview Drive Associates assigned its rights under the PSA to defendant or that defendant can otherwise be considered 922 Riverview Drive Associates' assign. To the extent the court's decision held otherwise, we conclude such constituted an abuse of discretion as it "rested on an impermissible basis.'" Est. of Kotsovska by Kotsovska, 221 N.J. at 588 (quoting Flagg, 171 N.J. at 571).

We reach a slightly different conclusion, however, with respect to the court's determination defendant was a "constituent entity" of 922 Riverview Drive Associates as that term lacks a clear meaning. The term "constituent" has been defined as something "that helps make up or complete a unit or a whole,"

or "[s]omeone who gives another the authority to act as a representative; a principal who appoints an agent." Black's Law Dictionary 388 (11th ed. 2019). Further, only two reported New Jersey decisions have used the term "constituent entity," see State v. Union Bag-Camp Paper Corp., 35 N.J. 390 (1961) and Arevalo v. Saginaw Mach. Systems, Inc., 344 N.J. Super. 490, 498 (App. Div. 2011), and in those cases the court used the term to refer to a company that merged with another to form a "survivor or product corporation," Union Bag-Camp Paper Corp., 35 N.J. at 394, or a corporation's alter-ego, Arevalo, 344 N.J. Super. at 498.

The motion record is devoid of proofs addressing the parties' intent as to whether they considered defendant to be a "constituent entity" of 922 Riverview Drive Associates at the time the PSA was drafted. Further, as detailed, the term "constituent" and "constituent entity" is subject to different interpretations and we are satisfied it is ambiguous. See Templo Fuente De Vida Corp., 224 N.J. at 200.

Although the court found the parties' course of conduct during litigation informed their respective intent as to the term "constituent entity," we are convinced the better course would be for the court to consider additional parol evidence with respect to the parties' intentions as to that critical term at the time

of drafting. Accordingly, we remand for the court to consider such parol evidence and provide findings of fact and conclusions of law consistent with Rule 1:7-4(a). The court may permit, at its discretion, further discovery on this limited issue.

Affirmed in part, reversed and vacated in part, and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0152-22